UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 JUN 22 AM 3:47

| | | |
|---|---|---|
| ERNEST J. RAGAN, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | CV-00-PT-3240 – M |
| BOBBY LOWMAN, et al., | ) ) ) | |
| Defendants. | ) ) | |

ENTERED
JUN 22 2001

## MEMORANDUM OPINION

This cause comes to be heard upon defendants Bobby Lowman ("defendant Lowman") and Best Life Health Insurance Company's ("defendant Best") Motions for Summary Judgment, filed on April 25, 2001 and April 19, 2001 respectively.

### FACTS

Defendants Bobby Lowman and Rhonda Lowman own the defendant Lowman Finishing, Inc., a hosiery mill. The Lowmans arranged for defendant Best to provide health insurance coverage to participating Lowman Finishing employees. At one time, plaintiff Earnest Ragan ("plaintiff") was covered by the plan, and a portion of his salary regularly was withheld to pay part of the premium. Defendant Lowman Finishing paid the other part. Every month, defendant Rhonda Lowman, the secretary for Lowman Finishing, would mail premium payments to defendant Best. Although defendant Best issued the insurance policy, one of its affiliate companies, defendant Beneficial Administration Company, Inc. ("defendant Beneficial"), actually administered the plan.

1

In 1998, defendant Lowman Finishing was experiencing cash flow problems, and was sometimes forced to selectively pay bills, including the bill for its employees' insurance premiums. After defendant Lowman Finishing did not pay the premium owed for October 1998, defendant Beneficial sent, along with the bill for the next premium, a message that "if we do not receive the October premium by November 15, your coverages will be cancelled." Lowman Finishing issued a check dated November 21, 1998, which was sent by certified mail on November 23, and which reached defendant Best's office on November 30. By that point, defendant Best had already sent to Lowman Finishing a "Final Notice of Cancellation," dated November 24, 1998, which confirmed that Lowman Finishing's group insurance plan had been canceled for non-payment of premiums. Defendant Best returned the check to Lowman Finishing on November 30, 1998. Although the final cancellation notice was issued in November, the effective date of the cancellation was retroactive to September 30, 1998, because September was the last month for which the premium had been paid.

Enclosed in the November 24 cancellation notice were individual notices for cancellation, which defendant Beneficial advised Lowman Finishing to distribute to each of its employees that were insured as of September 30, 1998. Defendant Rhonda Lowman claims that she does not remember receiving the November 24, 1998 notice, but cannot rule out the possibility that Lowman Finishing received such a notice. The plaintiff claims that he never received notice of any sort from any of the defendants. He alleges that the first time that he learned of a problem with the insurance coverage was when his insurance card was rejected at a pharmacy in December 1998. Even after that, the plaintiff claims that he did not understand that his insurance coverage had been terminated until he received a communication from defendant Best dated January 11, 1999, in which Best declined to pay for medical care charges that were

incurred after the September 30, 1998 termination date.

After learning that Lowman Finishing's group insurance plan had been cancelled, the Lowmans contacted the local Alfa insurance office and arranged for their employees to obtain insurance there, through Blue Cross/Blue Shield of Alabama.

A possible disputed fact is the exact time that the plaintiff knew or should have known that his insurance coverage had been terminated. The plaintiff claims that he had no inkling that he was no longer covered until he went to a Rite-Aid pharmacy on December 1, 1998, to fill a prescription for an eye infection.[1] His insurance card was declined at the pharmacy. On December 8, 1998, defendant Lowman Finishing issued a check to the plaintiff to reimburse him for premium payments that had been withheld from his salary after September 30, 1998. Defendant Bobby Lowman claims that he personally handed the check to the plaintiff and informed him that insurance coverage no longer existed with defendant Best. Lowman also claims that he advised the plaintiff to go to the local Alfa insurance office and obtain coverage from Blue Cross/Blue Shield. The defendants claim that the plaintiff received the check and knew of the lack of coverage "on or after December 8, 1998," and that, if he did not know then, he definitely acquired the knowledge on December 18, 1998, when he received a paycheck from which the customary insurance premium had not been withheld. The plaintiff eventually obtained insurance from Blue Cross/Blue Shield that was effective as of February 1, 1999. However, although he claims in his complaint that he suffered extensive medical costs as a result of the defendants' omissions, other than the December 1, 1998 prescription and, perhaps, the

---

[1] The plaintiff, subsequent to the December 1, 1998 examination for the eye infection, was diagnosed with cancer of the pharynx. He claims to have informed the physician who was examining his eye that he was experiencing hoarseness, and that the physician told him to wait for a week, and, if the hoarseness did not go away, return for another examination. At some undefined point, the plaintiff was diagnosed with the cancer.

December 1 physician's examination, the plaintiff has submitted no claims to defendant Best and had, at the time of his deposition, submitted no claims to Blue Cross/Blue Shield.

Plaintiff Ernest Ragan ("plaintiff") originally brought this action in the Circuit Court for Dekalb County, Alabama on October 2, 2000. The defendants filed a timely Notice of Removal with this court on November 13, 2000. The four counts of the plaintiff's complaint are brought entirely pursuant to state law. Quite frankly, it is difficult to determine exactly what the plaintiff's claims are. The four counts are untitled and do not purport to plead any particular cause of action, and it is unclear from the language of the counts what common law causes of action the plaintiff is attempting to plead. Count One appears to attempt simultaneously to plead counts of fraudulent misrepresentation and breach of fiduciary duty against the Lowmans and Lowman Finishing; Count Two appears to seek damages for failure to notify of the cancellation, again, against the Lowmans; Count Three seems to seek damages for failure to notify against defendants Best and Beneficial; and Count Four appears simply to re-state Count Three in a different way.

## ARGUMENT

The parties' arguments are simple. Defendants Best and Beneficial argue that the plan at issue is an ERISA plan. They assert that, because they are, respectively, the carrier and the administrator of an ERISA employee benefits plan, and because the plaintiffs' claims against them relate to their duties under the employmee benefit plan, the plaintiff's state law claims are preempted by ERISA, and should be dismissed in order to allow the plaintiff to pursue actual ERISA claims. They argue that, although the plaintiff does not attempt to state a claim under ERISA or any other federal statute, this court has removal jurisdiction because ERISA superpreempts state law. The plaintiff has not filed a motion to remand and does not dispute this

court's removal jurisdiction.

The Lowman defendants argue that they were not fiduciaries under the insurance plan, and, therefore, cannot be sued for breach of fiduciary duty. The Lowmans contend that they are not fiduciaries because they do not have sufficient discretionary authority to manage or to control the management of the plan, under the ERISA definition of "fiduciary." The Lowmans also argue that the plaintiff's claims against them are preempted by ERISA because they "relate to" an ERISA plan.

In response to defendants Best and Beneficial's Motion for Summary Judgment, the plaintiff conceded that the defendants' arguments regarding ERISA preemption are "well taken," although he claimed that, nevertheless, he is entitled to some sort of relief. However, the plaintiff does not attempt to oppose Best and Beneficial's arguments. The plaintiff did not respond at all to the Lowman defendants' arguments.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment is to be granted if there is no genuine issue of material fact. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The evidence of the non-moving party is to be believed, and the court is not to attempt to perform jury functions such as credibility determinations. Id. After considering everything in the record, all permissible inferences are to be drawn in favor of the non-moving party. Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

When the non-moving party has the burden of proof at trial, it must come forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the evidence is merely colorable or is not

significantly probative, summary judgment may be proper. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). Summary judgment is appropriate if on any element there would be insufficient evidence to require submission of the case to a jury. <u>Earley</u>, 907 F.2d at 1080. "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

## CONCLUSION

Plaintiff's attorney has confirmed, as he indicated at the pretrial conference and in his response to defendants Beneficial and Best's Motion for Summary Judgment, that he recognizes that because of the lack of exhaustion of administrative remedies, the case should be dismissed without prejudice. The case will be dismissed without prejudice.[2]

This 21st day of June 2001,

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] It appears to the court that it might be appropriate for one or more of the defendants in this action to attempt to resolve this situation, which, apparently, was not of the plaintiff's making.